Anthony S. Petru, Esq. (State Bar No. 91399)
petru@hmnlaw.com
Paula A. Rasmussen, Esq. (State Bar No. 258352)
rasmussen@hmnlaw.com
HILDEBRAND, McLEOD & NELSON, LLP.
Westlake Building
350 Frank H. Ogawa Plaza, 4th Floor
Oakland, CA 94612
TEL:   (510) 451-6732
FAX:   (510) 465-7023

Attorney for Plaintiff
CHARLES HENLEY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA-OAKLAND

| | |
|---|---|
| CHARLES HENLEY, | CASE NO. |
| Plaintiff, | **COMPLAINT FOR DAMAGES** <br> **Federal Railroad Safety Act** |
| vs. | **(49 USC §§ 20109 *et seq.*);** |
| UNION PACIFIC RAILROAD COMPANY, a corporation, | **AND JURY DEMAND** |
| Defendant. | |

Plaintiff CHARLES HENLEY ("HENLEY"), employee identification number 000433616, complains against Defendant UNION PACIFIC RAILROAD COMPANY ("UPRR"), and alleges as follows:

**JURISDICTION AND VENUE**

1

This cause of action is brought under and by virtue of the provisions of the Federal Railroad Safety Act, 49 USC §§ 20101 *et seq.*, and in particular, 49 USC §§ 20109, "Employee protections." An employee may bring an original action at law or equity for *de novo* review in the District Court of the United States if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint.  49 U.S.C. § 20109(d)(3).  As such, this court has

1

jurisdiction of this matter.  See also, 28 U.S.C. § 1331 (Federal question). This action is properly venued in the Northern District of California, Oakland, in Alameda County, since the Complaint may be brought in any "appropriate district court of the United States," pursuant to 49 U.S.C. § 20109(d)(3), which includes any judicial district in which Defendant UPRR, a corporation, resides. 28 U.S.C. § 1391(b)(1) & (d).  UPRR, an interstate rail carrier, owns and operates railroad tracks in the Counties of Alameda and Contra Costa.

**TIMELY FILING – STATUTE OF LIMITATIONS**

**2**

Plaintiff filed his complaint with the Secretary of Labor on November 23, 2015.  It has been more than 210 days since that date, and the Secretary has not issued a final decision.  The delay was not due to any bad faith on the part of Plaintiff.  On June 28, 2015, Plaintiff submitted to the Department of Labor, his notice of intention to file an action in the United States District Court.  29 C.F.R. § 1982.144.  As such, this action is timely.

**CAUSE OF ACTION**

**3**

The facts and circumstances of this complaint arose while UPRR was subject to the above mentioned statutes and regulations and that HENLEY was employed as a conductor by UPRR, and that UPRR was and is a carrier engaged in interstate commerce and subject to the aforesaid federal statutes and regulations relating to retaliation. That, at all relevant times, HENLEY was employed by UPRR in Benicia, California.  As part of his job, HENLEY was required to perform air tests on locomotives. On June 29, 2015 at approximately 10:30 p.m. while conducting the air test at the rear of his assigned train, HENLEY was startled by a trespasser hiding in the auto racks. HENLEY immediately notified his supervisor Elizabeth Lujan who contacted the Response Management Communication Center ("RMCC") and Benicia Police Department to report the incident. HENLEY then finished his twelve-hour shift at Roseville, CA returning to Benicia the next morning. The next morning, as his hours to work were expiring around 8:30 am, his manager David Sperow instructed HENLEY to leave the locomotive afoul of

1  the adjacent track after he tied up the brakes. Manager Jeff Collins then instructed Mr. Sperow to
2  charge HENLEY for fouling the adjacent track at 11:00 a.m. on June 30, 2015. HENLEY alleges
3  that the charge letter was in fact issued in response to his safety report regarding trespassers the
4  day before, rather than the track violation HENLEY was instructed by his manager to do.
5  HENLEY called in sick on July 1, 2015 still feeling shaken from the incident of June 29, 2015.

6  After HENLEY'S next twelve-hour shift on July 2, 2015, HENLEY was then pulled
7  from service by UPRR, UPRR requested a fitness for duty evaluation and HENLEY was placed in
8  Pending Physical status. Manager David Sperow and manager Jeff Collins referred HENLEY to
9  undergo a psychological examination before he would be allowed to return to service. On July 19,
10 2015, HENLEY completed the exam with licensed psychologist of Union Pacific's choosing, Ms.
11 Valerie Fox. It was determined he could competently perform all of his job responsibilities and the
12 recommendation that he and his family receive counseling was made. Ms. Fox stated that
13 HENLEY could return to work. However, to date UPRR has not allowed HENLEY to return to
14 service. Instead, UPRR continued to demand HENLEY submit to further psychological testing
15 without identification of any specific requirements or protocol nor any notification under which
16 the railroad has such authority for the requirement.

18                                      4

19 HENLEY requested a letter from the medical department stating what additional testing
20 would be required to allow him to return to work. To date, no documents nor any response have
21 been provided. In October 2015, via telephone calls, Union Pacific nurse Theresa Rondino notified
22 HENLEY that he would need to take a physical exam. When HENLEY asked that the request be in
23 writing, none was provided. Instead, Union Pacific unilaterally scheduled HENLEY to take a five-
24 hour psychiatric exam on October 26, 2015 "for evaluation" absent court order or any explanation
25 of the scope of the exam. HENLEY did not submit to the second psychiatric evaluation by UPRR
26 doctor, Dr. Larsen. However, on November 23, 2015, Dr. Larsen reviewed the initial report by Ms.
27 Fox, reviewed Dr. Terry Davis' (a consulting psychiatrist who never saw HENLEY) *review* of Ms.
28

1  Fox's report, and concluded among other things that HENLEY required a "comprehensive
2  psychiatric evaluation" before he could return to work.

5

HENLEY, in an effort to get back to work, consented to a fitness for duty exam by a doctor of his choosing on February 26, 2016. Dr. Perez concluded that he had no reason to question HENLEY'S ability to carry out his customary duties from a psychological/psychiatric perspective. Through counsel he sent the report to UPRR requesting to be allowed to return to work.

6

To date, HENLEY has not been allowed to report to work. UPRR has terminated his insurance, his life insurance, and paid all pending vacation pay. HENLEY has been terminated from UPRR, constructively or actually, and has not been allowed to return to work since reporting the trespasser he saw in June of 2015.

7

On November 17, 2015 on the UPRR employee website, approximately seven months before HENLEY'S report of trespassers, Union Pacific posted a warning and request that employees remain vigilant in reporting trespassers on company property, including instructions on removal of unauthorized personnel and utilizing the RMCC.  UPRR knew or should have known of the dangers and safety concerns of trespassers at the Benicia yard. That UPRR retaliated against HENLEY for reporting his concerns at discovering a trespasser at the rail yard by pulling him from service, charging him with a violation, insisting he submit to repeated psychological testing, and ultimately terminating him. That even despite medical clearance by a Union Pacific retained psychologist, and an outside neuro-psychologist, HENLEY has not been returned to work. Federal railroad safety regulations prohibit UPRR from retaliating or disciplining employees for reporting good faith safety concerns.  49 C.F.R. §§ 218.21, et seq.; 49 U.S.C. § 20109 (b)(A).

HILDEBRAND, MCLEOD & NELSON, INC.
ATTORNEYS AT LAW
WESTLAKE BUILDING
350 FRANK H. OGAWA PLAZA, FOURTH FLOOR
OAKLAND CALIFORNIA 94612-2006
(510) 451-6732

8

As a direct result of UPRR's violations of law, HENLEY has suffered lost wages, benefits, and medical expenses, all to his damage and to be established according to proof.

9

As a further direct and legal result of UPRR's above described tortious wrongful conduct, and reckless disregard for HENLEY'S rights, HENLEY has suffered humiliation, anxiety, mental anguish and emotional distress all to his damage and to be established according to proof.

10

Pursuant to 49 U.S.C. § 20109(d)(3) of the Federal Railroad Safety Act, Plaintiff now brings this original action at law and equity for *de novo* review by the United States District Court, Northern District – Oakland, which has jurisdiction over this Whistleblower action without regard to the amount in controversy.

11

The above described wrongful conduct of the UPRR was done with malice, fraud, and oppression and reckless disregard of HENLEY'S right to report UPRR's unsafe workplace conditions without retaliation.

WHEREFORE, in order to encourage employees to freely report all injuries and safety concerns without fear of retaliation, thereby ensuring the Federal Railroad Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area of our nation's railroad operations, HENLEY prays for judgment against UPRR as follows:

1. For back pay with interest;
2. For front pay if reinstatement is impossible;
3. For general damages according to proof;
4. For all loss of earnings, economic losses, and other financial damages according to proof;

5. All costs of this suit;

6. Pre and post judgment interest;

7. For punitive damages according to proof;

8. For all relief available pursuant to the Federal Rail Safety Act, 49 USC §§ 20109 *et seq.*

9. For attorneys' fees according to proof; and

10. For such other relief as deemed just and proper.

12

DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff CHARLES HENLEY demands a trial by jury on all issues so triable.

DATED: July 5, 2016                     HILDEBRAND, McLEOD & NELSON, INC.


By:   */s/ Paula A. Rasmussen*
   ANTHONY S. PETRU
   PAULA A. RASMUSSEN
   Attorneys for Plaintiff
   CHARLES HENLEY